IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHRISTINA PITTS,<br><br>    Plaintiff,<br>v.<br><br>CAMINO REAL COMMUNITY MHMR CENTER,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§ Civil Action No. 21-171<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF CHRISTINA PITTS' ORIGINAL COMPLAINT AND JURY DEMAND**

## INTRODUCTION

This is an action for unlawful interference and discrimination under the Family and Medical Leave Act (FMLA). Plaintiff Cristina Pitts was employed by Defendant Camino Real Community MHMR Center as a case manager. She contracted a severe case of COVID-19 and suffered significant complications, including COVID pneumonia, that rendered her incapacitated for a number of days and required her to seek medical attention. Plaintiff requested time off from work, which qualified for FMLA leave. Defendant failed to offer Plaintiff FMLA leave and instead discharged Plaintiff from employment several days after Plaintiff became incapacitated. By doing so, Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff in violation of the anti-discrimination provisions of the FMLA.

## PARTIES

1. Plaintiff Cristina Pitts is an individual residing in Schertz, Texas. She may be served with papers in this case through the undersigned counsel.

1

2.      Defendant Camino Real Community MHMR Center is a nonprofit corporation organized under the laws of the State of Texas. It maintains its principal place of business at 19965 FM 3175, Lytle, Texas 78052. It may be served with process through its registered agent, Emma C. Garcia at 19965 FM 3175, Lytle, Texas 78052.

## JURISDICTION AND VENUE

3.      The Court possesses personal jurisdiction over Defendant because Defendant is organized under the laws of the State of Texas, because Defendant maintains its principal place of business in Texas, and because Defendant continuously does business in Texas. The Court possesses subject-matter jurisdiction over this case pursuant to 28 U.S.C. Section 1331 because Plaintiff brings suit under a federal statute, the FMLA. Venue is proper in the Western District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic boundaries of the San Antonio Division of the Western District of Texas.

## FACTUAL BACKGROUND

4.      Defendant operates mental health facilities in several towns in South Texas. Plaintiff was employed by Defendant as a case manager at Defendant's mental health clinic for children in Floresville, Texas.

5.      Plaintiff became sick on January 2, 2021 after she learned that she had been exposed to COVID-19 several days before. By January 5, her symptoms had worsened, and she was very ill. Her symptoms included fever, chills, body aches, and a severe cough. Plaintiff is the spouse of an active-duty member of the U.S. Air Force. So she receives her healthcare through Tri-Care at Joint Base Randolph and at Brook Army Medical Center. On that same day, she was evaluated by a physician at BAMC and tested for COVID. After examining Plaintiff and asking Plaintiff a number of questions regarding her symptoms, the physician opined that Plaintiff had COVID-19

2

and that she must quarantine. Nevertheless, the physician directed Plaintiff to the testing line, and shortly thereafter, Plaintiff was tested for COVID-19.

6. On January 6, Plaintiff was informed that she tested positive for COVID-19. Her symptoms continued to get worse, and her physical condition continued to deteriorate. Plaintiff contacted her supervisor and advised that she had been evaluated by a doctor and that she had received a positive test result for COVID-19. Plaintiff also informed her supervisor that she was experiencing severe symptoms, including fever, chills, cough, labored breathing, and difficulty talking. The supervisor seemed sympathetic to Plaintiff's situation and told her to take her of herself. The supervisor also stated that Defendant did not need a copy of Plaintiff's positive test result, which Plaintiff had yet to receive.

7. On January 7, Defendant asked Plaintiff to work. Plaintiff explained that she couldn't, as her symptoms continued to deteriorate. By this time, she could barely walk and found it incredibly difficult to get out of bed. This apparently did not sit well with management because Plaintiff's supervisor called again the next day, January 8, to advise that the manager needed a copy of the positive test result. Plaintiff explained as best she could that she had not received it yet, and that getting test results in the military medicine system can be frustratingly slow. Nevertheless, Plaintiff promised to do whatever she could, including calling the doctor, to try to expedite getting the test results. Plaintiff called the nurse line to see about getting the test results. She was told by the nurse that she would have to talk to the doctor and that it might be 72 hours before the doctor called her back.

8. Plaintiff's manager called Plaintiff the same day to demand the test results. Plaintiff explained to him the difficulty she was experiencing with getting the test results.

9. On Monday, January 11, the supervisor called Plaintiff again. Plaintiff had nausea, was throwing up, and had pain in chest and lungs. (Unbeknowst to Plaintiff at the time, she had developed COVID pneumonia.) Plaintiff told the supervisor that she was so sick that she could barely talk. The supervisor told Plaintiff that management needed the positive test result.

10. Then, shortly thereafter, at 10:30am, the manager called Plaintiff. He told Plaintiff that she had until 1:00pm to provide the test result or she would face disciplinary action. Not knowing what to do, Plaintiff called her husband, a senior non-commissioned officer who was on duty away from San Antonio, to see if he could help her get the test results, as she was now being threatened with discipline. Plaintiff's husband called his physician, who promised to call Plaintiff's physician. Plaintiff's husband also called Plaintiff's manager to explain that Plaintiff was trying to obtain the test result but Tri-Care was very slow. The manager told Plaintiff's husband not to worry and that he understood that Plaintiff was very sick. The manager was himself a former member of the Air Force and well knew how slow military medicine can be.

11. Approximately at around 2:00pm, the test results were finally uploaded, and Plaintiff texted them to the manager. The manager did not reply to Plaintiff's text message, which concerned her given her previous conversation with the manager. On the following day, Plaintiff tried to log into the work system, but she received a message that she was unauthorized. So Plaintiff sent her manager an email explaining that she was not able to log in. The manager responded with a letter stating that Plaintiff had been terminated for not supplying the test results by 1:00pm on January 11. Given that this termination was completely inconsistent with what he had been told by the manager the prior day, Plaintiff's husband called the manager. The manager stated that Plaintiff was discharged for "insubordination" because she had failed to timely supply the test result.

4

12. Meanwhile, Plaintiff's medical condition continued to deteriorate. She noticed further changes in her cough, and her lips had turned blue. She therefore called the nurse line, and after a nurse reviewed Plaintiff's symptoms, the nurse directed Plaintiff to report to the emergency room at BAMC immediately. There, Plaintiff was diagnosed with COVID pneumonia and was told that she should be admitted but there was no bed for her given the COVID crisis. So Plaintiff was prescribed multiple medications and antibiotics and sent home with instructions to call 911 if her condition deteriorated further. Plaintiff continued to receive medical treatment, and thankfully, has now recovered from COVID-19.

### CAUSE OF ACTION: VIOLATIONS OF FMLA
### (INTERFERENCE AND DISCRIMINATION)

13. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 12 supra.

14. Plaintiff pleads that Defendant has violated her rights under the Family and Medical Leave Act.

15. Defendant is an employer within the meaning of the FMLA in that it employs more than 50 employees in each work day of at least twenty weeks in 2020, and Defendant will likewise employ more than 50 employees in each work day of at least twenty weeks in 2021. Plaintiff was an eligible employee under the FMLA in that, at the time she requested FMLA-qualifying leave as described above, she had been employed for more than a year; she had worked in excess of 1250 hours during the year preceding when she sought FMLA-qualifying leave; and Defendant employed more than 50 employees within a 75-mile radius of the location where Plaintiff worked.

16. Plaintiff suffered from a serious health condition. Plaintiff apprised local management of her COVID infection, her serious symptoms, her inability to work, and the fact that she had already consulted and been evaluated by health care providers in person. Plaintiff requested time off from work due to her incapacity from COVID. The requested time off was

FMLA qualifying, but Defendant did not designate the leave as FMLA leave. Nor did Defendant apprise Plaintiff of her FMLA rights. Shortly thereafter, Defendant discharged Plaintiff from employment, purportedly because Plaintiff was late in providing her COVID test results. However, as Plaintiff had repeatedly explained, she was having difficulty obtaining a copy of the test results despite her best efforts. Plaintiff ultimately obtained a copy of the test results approximately one hour after the arbitrary deadline set by Plaintiff's manager. Nevertheless, Defendant discharged Plaintiff from employment.

17. Plaintiff contends that Defendant unlawfully interfered with her right to FMLA leave by terminating her employment for no valid reason prior to Plaintiff taking her FMLA-qualifying leave for surgery and convalescence.

18. Pleading in addition, or in the alternative, Plaintiff contends that Defendant discharged Plaintiff in retaliation for requesting FMLA-qualifying leave.

19. As a result of her wrongful and illegal termination from employment, Plaintiff has suffered lost wages and benefits, and she will likely continue suffering these loses in the future. Plaintiff now sues for these damages. Additionally, Plaintiff is entitled to an award of liquidated damages because Defendant cannot establish that its actions towards Plaintiff were taken in good faith and that it had objectively reasonable grounds for believing that its actions toward Plaintiff, including the discharge of Plaintiff, did not violate the FMLA.

20. Lastly, because Plaintiff has been forced to retain legal counsel to vindicate her legal rights, Plaintiff is entitled to an award of attorney fees.

**JURY DEMAND**

21. Plaintiff demands a trial by jury.

## CONCLUSION AND PRAYER

22. Plaintiff prays that, upon final judgment, she be awarded the following:

a. Lost wages and benefits in the past and in the future;

b. Liquidated damages;

c. Attorney fees;

d. Costs of court;

e. Post-judgment interest; and

f. All other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ MICHAEL V. GALO, JR.
Michael V. Galo, Jr.
State Bar No. 00790734
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
CHRISTINA PITTS